UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

TIFFANY HILL,                                    )
                                                 )
                          PLAINTIFF,             )
                                                 )
          v.                                     )
                                                 )
EPILSEPSY FOUNDATION OF GREATER    )
CHICAGO ("EFGC")                                 )
                                                 )
                                                 )
                          DEFENDANT.             )

## COMPLAINT

Plaintiff, Tiffany Hill, by and through her attorneys of Hall-Jackson and Associates, P.C., brings suit against Defendant, Epilepsy Foundation of Greater Chicago ("EFGC"), and alleges:

## JURISDICTION AND VENUE

1. Jurisdiction over the statutory violation alleged is conferred as follows:  This Court has jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., the Americans with Disabilities Act, 42 U.S.C §§ 12101 et seq., the Americans with Disabilities Act of 2008 and supplemental jurisdiction over Plaintiff's Illinois Whistleblower Act count as these claims are part of the same case or controversy that this Court has Original Jurisdiction over.  28 U.S.C. § 1367.

2. Venue is Proper in this district pursuant to 28 U.S. C. § 1391, because Plaintiff's cause of action arose in Cook County, Illinois, and the Defendants are doing business in and found within the boundaries of the Northern District of Illinois, Eastern Division.

## PARTIES

3. The Plaintiff is Tiffany Hill, whom is a resident of the county of Cook, in the city of Chicago, and state of Illinois.

4. The Defendant is EFGC, whose street address and registered business address is 17 North State Street, Suite # 650, Chicago, IL 60602.

## PROCEDURAL BACKGROUND

5. On or around March 2, 2021, Plaintiff filed a charge of discrimination against the Defendants with the Illinois Department of Human Rights (IDHR), alleging that Defendant discriminated against her based on race, disability, and retaliation for engaging in

protected activity.  See Plaintiff's Exhibit 1- Charge of Discrimination.

6.  The IDHR and Equal Employment Opportunity Commission (EEOC) cross-file charges amongst each other, and Plaintiff has no reason to believe that wasn't followed here.

7.  The IDHR sent a Notice of Dismissal for Lack of Substantial Evidence on February 28, 2022.

8.  On or around March 16, 2022, Plaintiff's counsel inquired with the EEOC to seek the status of a Right to Sue notice from the EEOC office.

9.  On or about April 8, 2022, the EEOC issued a right to sue within 90 days of receipt of this notice.  See Plaintiff's Exhibit 2 – Notice of Right to Sue.

## FACTS

10.  Plaintiff, Tiffany Hill (herein addressed as Plaintiff) is 45 years old and identifies as African-American.

11.  Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD) and anxiety.

12.  Plaintiff majored in Psychology and minored in Family and Child Studies and received her Bachelors' from Northern Illinois University in 1999.

13.  Plaintiff received a Masters' in Business Administration with emphasis on Healthcare Administration from Saint Xavier University in 2008.

14.  While completing her Masters', Plaintiff also obtained a Certificate of Manage Care from Saint Xavier University in 2008.

15.  The degrees and certificates Plaintiff obtained focused on healthcare and human services and Plaintiff developed specialized knowledge of processing and implementing these procedures.

16.  From 2000-2008, Plaintiff was employed at Easter Seals for Service Coordination/Case Management.  Plaintiff's job duties included, but were not limited to: coordinated services for individuals with disabilities, such as epilepsy, neurological conditions, autism, immaturity.  Plaintiff oversaw the application process for the grant, implemented, and complied with the guidelines for the grant Easter Seals received.

17.  From May 2008 – October 2009, Plaintiff was an Associate Executive Director at North American Medical Management Company.  Plaintiff's job duties included, but were not limited to:  trained physicians on health plans and implemented the day-to-day and all financial and operational services.

18.  From September 2011 – April 2012, Plaintiff was a Physician Referral Liaison for Metro South Hospital.  Plaintiff's job duties included, but were not limited to:  connected the patients with the physicians for services within the hospital,  marketed the hospital's

occupational health and home health services, oversaw patients' discharge plans, and reported any complaints from the patients to the hospital and made recommendations on how to resolve the complaints.

19. From July 2013-2015, Plaintiff was a Regional Outreach Coordinator for State of Illinois and appointed by Governor. Plaintiff's job duties was included, but were not limited to: implemented the Affordable Care Act ("ACA") for the State of Illinois through consumer engagement outreach and consumer education. Connected with stakeholders and responsible for grant management for agencies to implement ACA and oversaw these agencies and monitored their activities and made sure they were compliant with the financial and operational side of grant administration.

20. On or around June 25, 2018, Plaintiff was hired as the Vice President of Client Services for Defendant, EFGC.

21. Plaintiff's duties included, but not limited to: responsible for grant-writing activities and public policy development, oversee data for local, state, and federal government agencies, review funding and financial reports to ensure accuracy, work with the President/CEO in planning and setting organizational goals, and work with scholarship and advocacy committees.

22. The Vice President of Client Services was a senior leadership position.

23. At all relevant times during Plaintiff's employment, the other positions of senior leadership positioners were held by:

    • BJ Shoemaker – Vice President of Finance and Operations (race: Caucasian, disability status: none, to Plaintiff's knowledge),

    • Eric Alvarez – Director of Marketing (race: Caucasian, disability status: none, to Plaintiff's knowledge) and

    • Ayesha Akthar – Director of Education, race: Asian, disability status: none to Plaintiff's knowledge).

24. During her employment, Plaintiff directly reported to Bryan Anderson, "Anderson" (race: Caucasian, disability status: none, to Plaintiff's knowledge), who is President/CEO of EFGC.

25. Anderson reports to the EFGC Board of Directors. At all relevant times, Howard Zwirn, "Zwirn"(race: Caucasian, disability status: none, to Plaintiff's knowledge) was Chairman of the Board.

26. Plaintiff was terminated on or around May 6, 2020, for allegedly not being able to perform her job duties with or without reasonable accommodation.

## COUNT I : DISABILITY DISCRIMINATION UNDER TITLE VII

27. Plaintiff restate and re-alleges paragraphs 1-26 as fully set forth herein.

28. Pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), discrimination is prohibited based on race, color, sex, religion, or national origin, and also provides protection under the Americans with Disabilities Act (ADA) prohibits discrimination on the basis of disability. The ADA and the ADA Amendments Act of 2008 (ADAAA) give civil rights protections to individuals with disabilities similar to those provided under Title VII.

29. Plaintiff suffers from PTSD and anxiety which are recognized as disabilities with the Americans with Disabilities Act, as amended.

30. On or around January 2020, Plaintiff requested time off work due to work related anxiety and also requested work protection order from Anderson.

31. Based on information and belief, Plaintiff sent her medical documents requesting leave due to anxiety to Shoemaker and Anderson, who then informed Zwirn.

32. Plaintiff sent her physician's reports throughout January 2020 to April 2020.

33. On or around January 24, 2020, Plaintiff sent an email to Anderson, Shoemaker, and Zwirn, from her personal email, as she was locked out of her work account.

34. Plaintiff requested to have her work account privileges restored and to have a work issued computer be sent to her home. Defendant denied these requests.

35. Based on information and belief, Morgan Murphy – Director of Communications, (race: Caucasian, disability status: none, to Plaintiff's knowledge) had epilepsy surgery had a computer sent to her home to work to use while she was recovering from surgery.

36. Based on information and belief, Defendant granted other employees remote access and work privileges to work remotely during the pandemic.

37. Based on information and belief, Anderson repeatedly questioned Plaintiff for using a table instead of a work desk in her office and repeatedly asked if she required an accommodation for using her table and did not do this to other members of senior leadership.

38. Plaintiff returned from her medical leave on or around April 13, 2020, but her work conditions did not improve.

39. Upon her return from medical leave, Plaintiff did not have direct control over her direct reports. Plaintiff would direct her team to complete a task but was then told by her team that Anderson wanted the assignment completed in a

different manner.

40. Based on information and belief Anderson appointed Stacey McCargo, (race: Caucasian, disability status: none, to Plaintiff's knowledge), to direct Plaintiff's staff while Plaintiff was out on leave.

41. However, upon Plaintiff's return from medical leave, Anderson still had Plaintiff's staff take direction from McCargo.

42. Also upon her return from medical leave, Anderson raised his voice toward Plaintiff for using the table in her office to work instead of her desk and isolated Plaintiff from workplace meetings Plaintiff needed to be in to perform her job.

43. Plaintiff again complained to Respondent's Board of Directors to complain about the harassment she suffered during her time at EFGC on or around April 24, 2020, via email.

44. In Plaintiff's email she stated this was her second request for a safety plan where she requested to be removed from reporting to Anderson and that her doctor's order regarding her anxiety be followed.

45. Plaintiff's request for a safety plan was denied and she was instead terminated on or around May 6, 2020.

46. Defendant's stated reason for termination was Plaintiff allegedly failed to provide a doctor's note for time off and the inability to perform the essential functions of her job with or without reasonable accommodations.

47. However, Plaintiff did provide a doctor which stated she would require medical leave off work from March 10, 2020, to April 10, 2020 for experiencing high levels of stress and anxiety that affected her health and mental wellbeing.

48. Plaintiff also provided a doctors note on or around April 28, 2020 which stated the Plaintiff may need time off work when experiencing high anxiety.

49. Plaintiff requested accommodations to work while she was out on leave, such as having her work computer sent to her and have remote access to her work log-in.

50. Based on information and belief, other employees were allowed access to their work log-in when they were out sick and allowed to work remotely.

51. Plaintiff requested accommodations when she returned from leave, such as reporting to someone else besides Anderson and following her doctor's medical

5

orders.

52. Based on information and belief, all of the accommodations Plaintiff requested were denied.

## **COUNT II: RACE DISCRIMINATION**

53. Plaintiff restate and re-alleges paragraphs 1-52 as fully set forth herein.

54. Pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), this law prohibits discrimination based on race, color, sex, religion, or national origin.

55. Based on information and belief, Plaintiff, who is African-American, was subject to unequal terms and conditions of her work employment as compared to other members of senior leadership who were not African-American.

56. Plaintiff was assigned tasks she previously did not do, such as completing tasks in Salesforce – Respondent's Customer Relationship Manager software.

57. When Plaintiff first started working, there was another Customer Relationship Manager software called Penelope.

58. Based on information and belief, the software was not transferred correctly, and Plaintiff learned about 80,000 reports were not transferred accurately.

59. Plaintiff told Anderson the system was disjointed and was missing about 80,000 reports and the system was inaccurate.

60. Based on information and belief, no other members of senior leadership were tasked by Anderson to complete Salesforce entries.

61. Plaintiff was told during her job interview from Anderson that senior leadership members, which includes Plaintiff, are expected to attend EFGC's Annual Gala events.

62. Based on information and belief, Plaintiff participated in the February 2019 Gala event held by Defendant.

63. However, Plaintiff was excluded from the Gala or around February 2020.

64. Based on information and belief, Stacey McCargo was invited to attend the Gala of 2020.

65. Based on information and belief, Plaintiff, African-American, was excluded from senior leadership meetings by Anderson, whereas other members of the senior leadership team who were not African-American were included on these meetings.

66. Based on information and belief, Anderson had other non-African-American members of senior leadership sit in to his one-on-one meetings with Plaintiff, but Plaintiff would not sit in on meetings of other members of senior leadership.

67. Based on information and belief, Anderson did not allow Plaintiff to put up time marked as "busy" on her calendar, but other non-African American members of senior leadership, such as BJ Shoemaker, was allowed to mark their calendar as busy.

68. Based on information and belief, Anderson cancelled meetings on Plaintiff's schedule without consulting Plaintiff and did not cancel the meetings of other members of senior leadership.

69. Based on information and belief, Anderson would increase surveillance on other African-American employees.

70. Based on information and belief, Anderson informed Plaintiff of an African-American employee that was not at his office and that Anderson had another colleague looking for the African-American employee.

71. Based on information and belief, Plaintiff inquired on where this African-American employee was and told Anderson the employee was out on lunch. Anderson was upset that Plaintiff inquired on the African-American employee's whereabouts.


## COUNT III – RETALIATION BASED ON ILLINOIS WHISTLEBLOWER ACT

72. Plaintiff reinstated paragraphs 1-71 as fully set forth herein.

73. Pursuant to the Illinois Whistleblower Act (740 ILCS 174/15 and 174/20): an Employer may not retaliate against any employee for disclosing information to agencies or refusing to participate in an activity in which the employee had "reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

74. During the time of Plaintiff's employment, Defendant would receive funding through two state grants: IDHS Grant (250) and the Donated Funds Initiative Grant (DFI).

75. Based on information and belief, Defendant would receive grants based on submitting information to the government for epilepsy patients it serviced to receive the grants.

76. Based on information and belief, the State of Illinois required certain information to be put on the reporting forms, which included the epilepsy patients' social security number.

77. Based on information and belief, Defendant would use arbitrary numbers for the patients social security number and duplicate this information for both the IDHS and DFI grant.

78. The only individuals who can be put in for the grants were individuals diagnosed with epilepsy.

79. Based on information and belief, Defendant would also put in names of individuals who were not diagnosed with epilepsy to get grant funding.

80. Based on information and belief, Jose Valdez – Administrative Manager (race: Hispanic, disability status: disabled, to Plaintiff's knowledge) was the employee in charge of putting the numbers into the system.

81. Prior to Plaintiff being hired, Valdez reported to Shoemaker.

82. Upon Plaintiff being hired, Valdez reported to Plaintiff.

83. On or around October and November of 2018, Plaintiff observed these arbitrary social security numbers and duplicate funding requests put in by Valdez for grant requests.

84. As part of her duties as VP of Client Services, on or around October and November of 2018, Plaintiff discussed with Valdez that inputting these arbitrary social security numbers and duplicating these numbers for funding is not the correct protocol.

85. Based on information and belief, Valdez told Plaintiff that this is what he was trained to do by EFGC.

86. On or around November of 2018, Plaintiff met Zwirn at an Educational Conference and spoke about this issue of inputting arbitrary social numbers for grant funding and told Zwirn she is working to get this situation resolved.

87. Based on information and belief, Plaintiff met with Valdez and Anderson to discuss compliance for grant funding by not inputting these arbitrary social

security numbers and duplicating them.

88. Based on information and belief, Anderson stated he would talk to senior leadership about the grant funding and also stated not to "poke the bear."

89. Based on information and belief, the funding issue was raised in senior leadership meetings. When it was Plaintiff's turn to speak at the meeting, she stated the information that Defendant reported to the State was not in compliance. Based on information and belief, Anderson responded by stating he was more concerned of the grant money would be taken away instead of fixing the compliance issues.

90. On or around December 2019, Plaintiff emailed the Illinois Department of Human Services and the State of Illinois about the proper method for grant reporting. Plaintiff was told that arbitrary numbers social security numbers are no longer allowed and informed Anderson of this change.

91. After Plaintiff reported the funding issues to Anderson, her work duties diminished.

92. Plaintiff was removed from directly supervising her staff and was instead told by Anderson to complete administrative duties in SalesForce and was excluded from meetings with other meetings with senior leadership.

93. Plaintiff was also removed from leading the scholarship committee and instead Anderson gave this position to Ms. Akhtar.

94. Based on information and belief, Plaintiff would be excluded from meetings that were vital to her role as VP of Client Services.

95. Based on information and belief, Anderson would inform Plaintiff on having a meeting with senior leadership on advocacy outreach for epilepsy, but would not include Plaintiff in the meeting and instead sent her a summary of the meeting.

96. Plaintiff's mental health suffered due to her work situation and Plaintiff reported the unfair treatment she received to the company hotline on or around December 2019.

97. Defendant concluded its investigation on or around January 18, 2020 and stated Plaintiff's claims were unfounded.

98. However, Plaintiff continued to suffer harm during a conversation she had with Anderson on or January 21, 2020, to the extent where Plaintiff had to take

medical leave.

99. Plaintiff sought medical appointment on or around January 22, 2020 and provided subsequent doctor notes which granted her leave until February 10, 2020.

100.    When Plaintiff returned back from her leave, her situation did not improve and continued to suffer harm from Defendant.  Plaintiff was on additional leave until on or around April 13, 2020.

101.    Plaintiff would work remotely on Fridays and participate in meetings through audio instead of video means, even prior to her being on medical leave.

102.    When Plaintiff returned to work from her medical leave on or around April 2020, Plaintiff attended her Friday work meeting via remote means through audio as usual.

103.    Anderson repeatedly directed Plaintiff to have her video on even though Plaintiff stated she could not as she was not dressed for a work meeting.

104.    Anderson persisted and Plaintiff was forced to turn on her video and was embarrassed and humiliated as she was not dressed in work attire.

105.    Plaintiff felt extremely humiliated, belittled and demeaned by Anderson's actions.

106.    Plaintiff was terminated on or around May 6, 2020 for allegedly failing to provide a doctor's note for time off and the inability to perform the essential functions of her job with or without reasonable accommodations.

## <u>COUNT IV – FALSE CLAIMS ACT</u>

107.    Plaintiff restates and re-alleges paragraphs 1-106 as fully set forth herein.

108.    Pursuant to the False Claims Act ("FCA") 31 U.S.C. § 3729, Plaintiff must show the following to establish an FCA violation: a false claim, the false claim was made with requisite scienter, the false claim is material to payment, the false claim caused the government to pay money.

109.    Based on information and belief, Defendant did certify false claims when it reported arbitrary social security numbers and duplicated these social security numbers for funding on two different grants.

110.    Based on information and belief, Defendant had knowledge of these arbitrary numbers and duplicated numbers as Plaintiff made Defendant aware of

it.

111.     Based on information and belief, Defendant became aware that arbitrary numbers were not to be put in after Plaintiff contacted the State of Illinois to determine the correct reporting procedures.

112.      Based on information and belief, Defendant ignored Plaintiff's appeals when she informed Defendant that these putting these arbitrary numbers in for two types of grant funding is not the correct protocol.

113.     Based on information and belief, in order to receive grant funding, Defendant was required to input individuals it serviced with epilepsy on their reports when it applied for funding.

114.     Plaintiff observed events that Defendant held which had the names of the people who attended on a list.

115.     Plaintiff observed that even though all of the individuals who attended these events did not have epilepsy, but Defendant still put the names of those individuals with arbitrary social security numbers on its report to receive grant funding.

116.     Based on information and belief, the more individuals that Defendant listed on its report for grant funding would result in more grant money that was paid by the government.

## ADVERSE ACTIONS

117.     Plaintiff's work situation began to worsen after she notified Anderson about the arbitrary numbers and duplicate entries Defendant engaged in to receive grant funding.

118.     Anderson gave Plaintiff an unwarranted performance review that Plaintiff did not manage a caseload.

119.     In April of 2019 as part of her duties as VP of Client Services, Plaintiff travelled to Springfield and advocated and trained children, parents, and other individuals with epilepsy to speak to the legislators for a team program.

120.     In December of 2020, Anderson sent an email to Plaintiff in December of 2020 which stated Plaintiff would no longer be needed for advocacy and Plaintiff responded to Anderson to say that she was being stripped of her advocacy duties.

121.    Plaintiff was terminated on May 6, 2020 for alleged failure to provide a doctor's note for time off and the inability to perform the essential functions of her job with or without reasonable accommodations.

122.    Plaintiff has been actively seeking a new job opportunity since her time with Defendant.

123.    As of today, Plaintiff has yet to find gainful employment since her time with Defendant.

124.    As of today, Plaintiff continues to go to therapy for her PTSD and anxiety.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.  A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of Illinois;

B.  A declaratory judgment that the Defendant is prohibited from receiving government funding.

C.  An injunction and order permanently restraining Defendant from engaging in such unlawful conduct.

D.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm in excess of $75,000.

E.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

F.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, insomnia, stress and anxiety, embarrassment, emotional pain and suffering, and emotional distress;

G.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.  An award of costs that Plaintiff has incurred in the action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law, and

I.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


**Dated:  July 7, 2022**


                                          Respectfully submitted,
                                          *s/Masood Ali*
                                          Masood Ali
                                          One of Plaintiff's Attorneys




Masood Ali
Chiquita Hall-Jackson
Hall-Jackson & Associates, P.C.
180 West Washington Street, Suite 820
Chicago, IL 60602
(312) 255-7105
mali@hall-jacksonandassociates.com
chj@hall-jacksonandassociates.com